HENRY C. CARHART, PROSECUTOR, v. SECOND NATIONAL BANK OF PHILLIPSBURG, NEW JERSEY, DEFENDANT.

Argued March 31, 1923—Decided April 20, 1923.

1. A check, bearing a certain date and drawn for a certain sum to the order of H., payable on a certain bank, and endorsed by H., was a negotiable instrument transferable by endorsement like a note and is governed by the same rules.

2. After a check has passed into the hands of a *bona fide* holder it is not in the power of the drawer to countermand it or stop payment.

---

On *certiorari* to the Warren Common Pleas.

For the prosecutor, *Egbert Rosecrans.*

For the defendant, *Smith & Smith.*

Argued by consent before MINTURN, J.

On March 3d, 1921, Joseph Hyndshaw presented to the defendant bank a check of Henry O. Carhart, dated March 3d, 1921, drawn to his order on the First National Bank of Blairstown, New Jersey, for $96 and endorsed by the payee. He asked for the cash and the teller knowing the financial standing of the maker, and also being acquainted with Mr. Hyndshaw, paid to him cash for the check. After receiving the money, Mr. Hyndshaw opened an account, depositing in his own name $60. The check in due course was for-

warded for collection, through the Federal Reserve Bank, and was protested on March 5th, 1921, by the Blairstown Bank, the payment having been stopped by notice from the maker and the check with protest notice was returned to the defendant.

On March 14th, 1921, J. M. Guthrie went to the bank and opened an account for $500, requesting that it be deposited in the name of J. R. Hyndshaw and J. M. Guthrie, Jr. The deposit slip in those names was made out by the teller and the deposit was entered in a pass-book, in the name of J. R. Hyndshaw and J. M. Guthrie, Jr., which was given to Mr. Guthrie. Owing to a mistake made by one of the employes of the bank, an entry of this deposit in the books of the bank was made in the personal account of J. R. Hyndshaw, who was credited with the $500. Some time thereafter, the cashier finding that Mr. Hyndshaw's account had a sufficient balance, ordered the Carhart check for $96 which he had endorsed, charged to that account. At the time this deposit was made Mr. Hyndshaw's actual balance had been reduced to $9.94.

In April overdrafts of the Hyndshaw account were discovered of which Mr. Guthrie was notified, and he called at the bank for an explanation, and then the cashier for the first time was informed of the error in crediting the $500 deposited by him to Hyndshaw's account, and Mr. Guthrie was permitted to withdraw the balance of the $500 which he had deposited. The checks were signed by J. R. Hyndshaw and J. M. Guthrie, Jr., and charged against the money that was deposited in the name of J. R. Hyndshaw.

Suit was instituted in the court for the trial of small causes, where judgment went against the prosecutor, and upon appeal before the Court of Common Pleas and a jury the judgment was affirmed.

The check was negotiable paper, transferable by endorsement like a note and governed by the same rules. *Gibbs* v. *Allen,* 87 *N. J. L.* 59; *Symonds* v. *Riley,* 188 *Mass.* 470; 5 *R. C. L.* 480, and cases cited.

The case is controlled in principle by *Montgomery Co.* v. *Manufacturers Co.,* 94 *N. J. L.* 152, decided by the Court of Errors and Appeals March 1st, 1920, in which the rule was declared that "A holder of a check in due course, who has paid the full amount agreed to be paid therefor before receiving notice of any infirmity in it or defect in the title of the person negotiating it, may enforce payment of the instrument for the full amount therefor against all parties liable thereon." This defendant is a holder in due course within the definition of such status by our Negotiable Instrument act. 3 *Comp. Stat., p.* 3741, § 54.

The fact that a clerk in the bank had through inadvertence charged the amount of the check to a partnership account in which the payee was one of the partners, where the check was not endorsed over to that account, and when the account was not in existence at the time the bank paid the check, cannot affect the right of the bank to collect the amount of the check as a *bona fide* holder for value.

The rule has been settled by well considered adjudications, in many jurisdictions, that after a check has passed into the hands of a *bona fide* holder, it is not in the power of the drawer to countermand or stop its payment. An analytical discussion of the subject and a collection of the cases is contained in 5 *R. C. L.* 567.

The charge of the learned trial court, as well as his rulings upon the evidence to which exceptions were taken, was in accord with this conception of the legal rule and the judgment will therefore be affirmed.