ITALIAN DISCOUNT AND TRUST COMPANY *vs.* JULIUS HERSHMAN & another.

Suffolk.    October 19, 20, 1927. — February 28, 1928.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Bills and Notes*, Holder in due course, Equitable defence. *Assignment. Evidence*, Competency, Of value of foreign money. *Practice, Civil,* Ordering verdict.

At the trial of an action of contract by a discount company upon a draft for lire drawn upon the defendant, there was evidence introduced by the plaintiff to show that the draft was drawn on the defendant as payment for goods sold the defendant by an Italian company, the Italian company being the drawer and payee; that the draft was indorsed by the drawer and sent to an Italian bank, which indorsed it to the plaintiff; that the defendant accepted the draft and thereafter it was discounted by the plaintiff, which paid the proceeds to the Italian bank; that the draft was not paid at maturity and was protested for nonpayment; that a broker for the shipper of the goods thereupon made payment of the draft to the plaintiff and took an assignment of the plaintiff's interest therein; and that thereafter the broker in writing reassigned his interest in the draft to the plaintiff for collection. In his opening statement to the jury, the defendant's counsel stated that, by reason of a breach of an agreement between the defendant and the drawer, the defendant was entitled to a set-off or to recoupment. Upon the plaintiff's evidence and the opening statement by the defendant's counsel, a verdict was ordered for the plaintiff by the trial judge. *Held,* that

(1) Testimony by a witness for the plaintiff of his own knowledge as to the source from which the plaintiff got the draft was admissible as showing that the plaintiff was an innocent purchaser for value;

(2) An exception by the defendant to the admission in evidence of the assignment from the broker to the plaintiff must be overruled, the assignment having been rightly admitted for the purpose of showing that the plaintiff held legal title to and was the owner of the draft, and had authority to maintain an action for its collection;

(3) Evidence as to the value of lire in money of the United States on the date of the maturity of the draft was admissible under G. L. c. 107, § 2;

(4) The opening statement of the defendant's counsel was contrary to facts agreed upon by the parties at the trial;

(5) The plaintiff was an innocent holder of the draft for value when it discounted the draft and when payment was refused at maturity;

(6) Under G. L. c. 107, § 81, the broker by the assignment to him obtained all the rights of the plaintiff as such holder, and by the reassignment those rights vested in the plaintiff;

(7) The title of the plaintiff and of the broker was valid against any alleged equities in favor of the defendant against the drawer;

(8) The verdict for the plaintiff properly was ordered.

CONTRACT, upon a draft for 22,101 lire described in the opinion. Writ in the Municipal Court of the City of Boston dated March 25, 1925.

On removal to the Superior Court, the action was tried before *Flynn*, J. The agreement in the record referred to in the opinion was as follows: "It was agreed that the goods for which the draft was issued were received by the defendants three or four days after acceptance; that this delivery was the second shipment of four shipments to have been made on one entire contract, deliveries to be made in December, 1924, January, March and May, 1925, and that before the March payment was due the defendants were led to believe that the balance of two shipments would not be made owing to sudden rise in price, and that the last two shipments were in fact never made."

Other material evidence and exceptions by the defendants are set forth in the opinion. Upon the plaintiff's evidence, and the opening statement by the defendants' counsel described in the opinion, the trial judge ordered a verdict for the plaintiff in the sum of $974.64. The defendants alleged exceptions.

*S. H. Borofsky*, for the defendants.

*H. E. Perkins*, for the plaintiff.

CROSBY, J. This is an action of contract in which the plaintiff seeks to recover, for the benefit of one L. Gandolfi

& Company, Inc., the sum of $884.04 with interest and protest fees on a draft for 22,101 lire.

The facts are as follows: The defendants, doing business as the Union Importing Company, in Boston, purchased a bill of goods under contract with Bertozzi, Abele & Figli of Parma, Italy, to be delivered in instalments. A draft, drawn by Bertozzi, Abele & Figli on the Union Importing Company, dated December 3, 1924, and payable to their own order on March 3, 1925, was indorsed by Bertozzi, Abele & Figli, attached to the bill of lading with consular and commercial invoices and sent to the Banca Nazionale de Credito, in Italy, which indorsed it to the plaintiff in New York City. The plaintiff sent the draft to The First National Bank of Boston for acceptance, and it was accepted by the defendants and returned to the plaintiff, which thereafter discounted it and paid the proceeds to the Banca Nazionale de Credito. Shortly before its maturity, on March 3, 1925, the plaintiff sent the draft to its correspondents in Boston for presentation, and it was returned unpaid with notice of protest and the certificate of the notary attached thereto. As the Union Importing Company refused to pay the draft, L. Gandolfi & Company, Inc., the broker for the shippers, made payment of it to the plaintiff rather than have that company proceed against the bank in Italy for which the plaintiff had discounted the draft.' Thereafter the Gandolfi company, in writing, and in consideration of one dollar, reassigned its rights in the draft to the plaintiff for collection. The case is before this court upon exceptions taken by the defendants to the admission of certain evidence, and to the allowance of the plaintiff's motion that a verdict be directed in its favor upon the plaintiff's evidence and the defendants' opening.

The first exception was to the following question: "From what source did the Italian Discount & Trust Co. get possession of that paper [the draft]?" The defendants' objection was that the witness could not answer unless he knew where the plaintiff obtained possession of the draft, and the judge so ruled. Thereafter the witness answered: "Banca Nazionale de Credito; that is the name of the bank." This

evidence was admissible as showing that the plaintiff was an innocent purchaser for value.

The next exception was to the admission in evidence of the assignment from the Gandolfi company to the plaintiff. It appeared that this company was not the agent of the shippers but their broker, and that the draft was assigned by it to the plaintiff for convenience and for the purpose of enabling the plaintiff to make collection thereof. It was the contention of the defendants that the plaintiff was not competent to bring the action. It is plain that the assignment was rightly admitted for the purpose of showing that the plaintiff held legal title to and was the owner of the draft, and had authority to maintain an action for its collection. This exception must be overruled.

The defendants excepted to the admission of evidence as to the value of 22,101 lire in money of the United States on March 3, 1925, the date when the draft was payable. This evidence was admissible. G. L. c. 107, § 2, in substance provides that where the instrument is expressed in any other money of account than the dollar, cent or mill, "in a suit thereon such other money shall be reduced to dollars and fractions thereof." *Cary* v. *Courtenay,* 103 Mass. 316.

It was admitted by the defendants that the draft attached to the bill of lading was accepted by them and was then discounted by the plaintiff and the proceeds paid to the Banca Nazionale de Credito. The defendants' counsel in his opening stated that the defendants had an agreement with Bertozzi, Abele & Figli, the drawers of the draft, for the sale and delivery by them to the defendants of certain merchandise to be delivered in four shipments, a draft to be drawn to pay for each when shipped. No question arises respecting the first shipment. The draft upon which this action is brought was in payment for the second shipment, which was actually received by the defendants in good condition. The defendants' counsel in his opening further stated that at the time the draft was due the third and fourth shipments should have been made, and for that reason the defendants were entitled to a set-off or to recoup damages which they had sustained by reason of such breach of con-

tract. This statement is contrary to the agreement in the record where it appears that the last shipment was to be made in May, 1925, which was after the maturity of the draft. The plaintiff was an innocent holder for value when it discounted the draft and when payment thereof at maturity was refused. The draft was a negotiable instrument and as such was subject to the law relating to negotiable paper. The plaintiff discounted it in good faith and paid the proceeds to the bank in Italy from which it was received by the plaintiff. If afterward the parties in Italy with whom the defendants contracted violated the terms of the contract, that does not entitle the defendants to avail themselves of any alleged equities as against the drawers of the draft.

Upon the refusal of the defendants to pay the draft, the Gandolfi company paid it to the plaintiff and took an assignment of the latter's interest therein. Thereafter it reassigned the draft to the plaintiff for collection. The plaintiff took the draft in good faith before it was due and paid full value for it, having no knowledge or notice at that time of any alleged equities between the defendants and the drawer. The draft was assigned by the plaintiff to the Gandolfi company and reassigned by it to the plaintiff after protest for nonpayment. Yet as the plaintiff took it and paid full value therefor before maturity, it was a holder in due course and had a perfect title when it assigned the draft to the Gandolfi company, which had all the rights of the assignor; and the Gandolfi company obtained all the rights of the former holder and by the reassignment vested in the plaintiff the same rights to enforce payment as the Gandolfi company had under the original assignment. G. L. c. 107, § 81. In other words, the assignment of the draft by the plaintiff to the Gandolfi company, after maturity and without consideration, and its reassignment to the plaintiff for the purpose of bringing an action upon it, entitle the latter to maintain the suit in the right of its transferrer who obtained a title under the original assignment which was valid against all defences now set up by the defendants. *Spofford* v. *Norton,* 126 Mass. 533. *Edgerly* v. *Lawson,* 176 Mass. 551, 553. *Lowell* v. *Bickford,* 201 Mass. 543, 545. *Roberts* v.

*Lane,* 64 Maine, 108, 111, 112. *Commerce Trust Co.* v. *Snelling,* 113 Kans. 272. As the plaintiff originally was a holder in due course and the Gandolfi company was a holder entitled to the rights of the plaintiff during the times they respectively held title, neither was affected by any alleged equities in favor of the defendants against the drawer. *Thompson* v. *Shepherd,* 12 Met. 311. *Fearing* v. *Clark,* 16 Gray, 74. *Symonds* v. *Riley,* 188 Mass. 470. *Dean* v. *Vice,* 234 Mass. 13.

*Exceptions overruled.*