BERNARD BERENSON *vs.* WILLIAM M. CONANT & others.

Suffolk.    December 9, 1912. — February 27, 1913.

Present: HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Bills and Notes,* Indorser, Validity. *Evidence,* Presumptions and burden of proof,. Admissions by conduct, Failure to testify. *Contract,* Rescission. *Fraud.*

If a negotiable promissory note, after several indorsements in blank, comes into the hands of a holder in due course, to whom the maker refuses payment when it comes due, and if, at the request of a prior indorser and upon satisfaction by him of his liability to the holder as indorser, the holder delivers the note to a person in the indorser's service, who does not thereby acquire any financial interest in the note but takes it merely to enable his employer, the indorser, more effectually to enforce payment, in a suit brought on the note in the name of the employee but really by the indorser and controlled by him, all defenses are open to the maker which would have been open had the suit been brought in the name of the indorser himself.

At the trial of a suit upon a promissory note against the maker, it appeared that the plaintiff, although deriving his title from a bank which had been a holder of the note in due course, had no financial interest in the note and had received it merely at the request of his employer, who was a prior indorser of the note, upon the employer's satisfying his liability to the bank as indorser, that the arrangement with the bank was carried through with the indorser's counsel present and advising and for the purpose of more effectually maintaining a suit against the maker, that the payee procured the note from the maker through fraud, that the indorser at the payee's request had indorsed the note so that the payee could get it discounted by the bank, that he had been associated with the payee in business, and that at the trial of the suit he was present and had an opportunity to testify at the close of the defendant's case but failed to do so. *Held,* that it properly could be found, that the plaintiff's

employer was a party to the fraud of the payee and that accordingly the plaintiff did not have the rights of a holder in due course.

Where, at the trial of a suit by an alleged holder in due course of a promissory note against the maker, it appears that the note was procured from the defendant through fraud of the payee, and a material issue is, whether the fraud was participated in by one for whom in the name of the plaintiff the suit was brought and by whom it was controlled, and such person is present at the hearing at the close of the defendant's evidence and is given an opportunity to testify but does not do so, such failure is evidence tending to prove his participation in the fraud of the payee.

Where, in selling certain shares of mining stock, the seller agreed that he would not negotiate a note which the purchaser gave to him in payment until the purchaser had had an opportunity to investigate the truth of certain representations made by the seller and also that upon demand by the purchaser he would take back the stock, and the seller fraudulently negotiates the note at once and absconds and the stock proves worthless, the purchaser, in order to rely upon a rescission of the transaction in defense to a suit upon the note by one who participated in the fraud, is not required to prove that he offered to return the stock to the seller. It is enough if he places it in the custody of the court.

BILL IN EQUITY, filed on February 15, 1908, in the nature of a creditor's bill to reach and apply certain property of the defendant in satisfaction of an alleged claim against the maker of a promissory note payable to Albert C. Jahl and Company, and indorsed in blank by Albert C. Jahl and Company and by Henry Genaske.

The case was referred to Franklin T. Hammond, Esquire, as master, for a hearing and a report upon seven issues framed. These issues were as follows:

1. "Was said note ever effectually delivered? "

2. "Was said note obtained from the defendant William M. Conant by fraud? "

3. "Was said note fraudulently put in circulation? "

4. "Is the signature of Albert C. Jahl and Company on said note genuine? "

5. "Is the signature of Henry Genaske on said note genuine? "

6. "Was the Boylston National Bank a holder of said note in due course? "

7. "Has the plaintiff the rights of a holder of said note in due course?"

The master found that the note was discounted by the Boylston National Bank for the payee, and answered the first six issues in the affirmative.

On the seventh issue, after a detailed finding of facts, stated in substance in the opinion, the master found as follows: "The

facts stated in this report fully disclose all the evidence bearing upon the question whether or not Genaske, at the time he indorsed the note in suit, was a party to or had knowledge of the fraud practised upon the defendant Conant. Upon all the evidence in the case I find that Genaske was a party to the fraud affecting the note in suit and had notice of such fraud and that accordingly the plaintiff does not have the rights of a holder of said note in due course."

The defendant filed exceptions to the master's report, which were overruled by *Pierce,* J., who confirmed the report, made a decree dismissing the bill, and reported the case for determination by this court.

*Lee M. Friedman,* for the plaintiff.

*B. B. Jones,* (*S. C. Bennett* with him,) for the defendants.

BRALEY, J. The defendant's promissory note having been obtained and negotiated through the fraud and deceit of the payee, the plaintiff had the burden of satisfying the master that he was a holder for value without notice of any infirmity. *Fillebrown* v. *Hayward,* 190 Mass. 472, 481, 482. The history of the note after it left the possession of the defendant shows, that upon indorsement by the payee and one Genaske it was discounted by the Boylston National Bank, and the payee's account credited with the proceeds. At maturity, the maker having refused payment, Genaske upon notice entered into negotiations with the bank which resulted in a transfer to the plaintiff. The master's findings, that the plaintiff has no financial interest, but is in the service of Genaske, at whose solicitation he became connected with the transaction to enable his employer, by whom the present suit is instituted and controlled, more effectually to enforce payment, subjects the plaintiff to all defenses which are available against Genaske himself. *Jump* v. *Leon,* 192 Mass. 511, 514. *Weld* v. *Clarke,* 209 Mass. 9, 12.

By the R. L. c. 73, § 75, "In the hands of any holder other than a holder in due course a negotiable instrument is subject to the same defenses as if it were non-negotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter." The bank, by the terms of the instrument, derived

title through Genaske, who was the last indorser. *Mulcare* v. *Welch,* 160 Mass. 58, 61. *Moore* v. *Cushing,* 162 Mass. 594. If as between himself and the bank the payment operated only to discharge his own liability arising from the contract of indorsement, he did not thereby become a purchaser of the bank's title within the meaning of this section, but remained an indorser with all the rights he previously had as against prior parties. *Guild* v. *Eager,* 17 Mass. 615. *Shaw* v. *Knox,* 98 Mass. 214. *Symonds* v. *Riley,* 188 Mass. 470. *De Reiset* v. *Loughery,* 205 Mass. 86. R. L. c. 73, § 138. It is however unnecessary to decide whether the right of recovery should be held to be grounded on a purchase of the bank's title under § 73, or on the rights of an indorser who has taken up dishonored commercial paper to pursue his remedy against the maker under § 138.*

The payee expressly agreed in writing as one of the conditions of delivery that the note should not be put in circulation until the defendant had an opportunity to investigate the truth of the representations as to the value of the shares of stock which constituted the consideration, and if the representations were found to be false the stock was to be returned and the note surrendered. In violation of the agreement the note was discounted on the day of its date. A fraudulent intent and purpose from the beginning on the part of the payee having been undisputed, if Genaske participated, he is a party to the fraud under § 73, and the same defenses which would have been open against the payee are available as to him under § 138. *Ellsworth* v. *Brewer,* 11 Pick. 315, 320. *Fisher* v. *Leland,* 4 Cush. 456. *Quinn* v. *Fuller,* 7 Cush. 224. *National Revere Bank* v. *Morse,* 163 Mass. 383, 385. *Fillebrown* v. *Hayward,* 190 Mass. 472. *Allen* v. *Puritan Trust Co.* 211 Mass. 409. The question is one of fact. The evidence on which the master found participation is fully reported.

---

* This section reads as follows: "Where the instrument is paid by a party secondarily liable thereon it is not discharged; but the party so paying it is remitted to his former rights as regards all prior parties, and he may strike out his own and all subsequent indorsements, and again negotiate the instrument, except:

"1. Where it is payable to the order of a third person, and has been paid by the drawer; and

"2. Where it was made or accepted for accommodation, and has been paid by the party accommodated."

It is difficult to prove fraud by declarations of the party whom it is sought to implicate. The evidence necessarily must be to a great extent, if not wholly, circumstantial. The mere payment to the bank when the note fell due did not call for elaborate precautions. Ordinarily, upon the bank's refusal at his request to bring suit against the maker, Genaske as an indorser would have taken it up, and in his own name enforced whatever remedy he had. The perfected arrangement of a transfer to the plaintiff, after the refusal, was devised with the assistance of counsel, retained and paid by him. What he disclosed as a client is not before us. The conclusion is almost irresistible, however, that after obtaining legal advice he understood that unless the plaintiff in some way could be placed in the bank's position there was grave doubt whether the note could be collected. It is a fair assumption, that his course of action was taken because of actual knowledge of the terms under which the note had been obtained by the payee, with whom at the time he was associated in business and for whom, before the bank would discount the paper, he was obliged to give the security of his indorsement.

Nor did the master err in holding, that the failure of Genaske to testify at the hearings, although afforded the opportunity,\* furnished evidence against him. It is his suit, as previously said, in all but the name, and he alone is materially interested in the result. His motives had been impugned, and his conduct assailed. A failure to give evidence, where if the measures taken had been nothing more than the conduct of a person unduly overcautious it was within his power to have said so, raised a reasonable presumption of unclean hands. *Howe* v. *Howe,* 199 Mass. 598, 603.

It appears that, the payee having absconded, the defendant, although making reasonable efforts, had been unable to tender to him the substantially worthless stock. But, as he agreed not to negotiate the note and upon demand by the defendant to return it and take back the stock, the defendant, having left the certificates with the master for the plaintiff's use, has done under the circumstances all that is possible by way of rescission. It moreover is reasonably certain, that the offer to rescind, if the payee could

---

\* Genaske was present at the hearing when the defendants rested, and the plaintiff could have called him to testify.

have been found, would have been a useless formality. *Foternick* v. *Watson*, 184 Mass. 187. *Perry* v. *Lancy*, 179 Mass. 183, 186.

The master's findings not having been plainly wrong should not be set aside, and, for reasons sufficiently stated, the plaintiff's exceptions to the report must be overruled and the decree dismissing the bill affirmed with costs.

*Ordered accordingly.*